## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

UNIQUEKA BEST, RASHEED BEST, JACOB ROSMARIN, and ARIEL RUBENSTEIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ROBINHOOD FINANCIAL, LLC, a Delaware LLC, ROBINHOOD SECURITIES, LLC, a Delaware LLC, and ROBINHOOD MARKETS, INC., a Delaware Corporation,

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

Plaintiffs Uniqueka Best, Rasheed Best, Jacob Rosmarin, and Ariel Rubenstein (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, make the following allegations upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on their personal knowledge.

## NATURE OF THE ACTION

1. This is a class action brought against Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood Markets, Inc. ("Robinhood Markets"), (collectively, "Robinhood") for prohibiting their customers from buying multiple publicly traded stock options, including but not limited to GameStop ("GME"), AMC Entertainment ("AMC"), Nokia ("NOK"), BlackBerry Limited ("BB"), Bed Bath & Beyond ("BBBY"), Express ("EXPR"), Koss Corporation ("KOSS"), and Naked Brand Group

("NAKD") (collectively, the "Stocks"), during an unprecedented rise in valuation of the aforementioned Stocks.

2.      Robinhood is a multi-billion-dollar online brokerage firm founded in 2013. Robinhood's popularity has soared among retail investors and has amassed an estimated 13 million users. However, none of those users were able to purchase the publicly traded Stocks on Robinhood's platform during the dates in question.

3.      Defendants actions not only deprived its customers from taking advantage of the rise of the Stocks valuation, but also manipulated the free and open market: causing a substantial decrease in the Stocks valuation, in violation of federal securities laws and state laws.

4.      As is set forth more particularly below, Plaintiffs and the proposed class members are consumers who were subject to Defendants' unfair and deceptive practices. Defendant's violations, as alleged herein, have harmed Plaintiffs and the public at large. Plaintiffs seek to vindicate their rights.

**PARTIES**

5.      Plaintiff Uniqueka Best is a New York resident who lives in New York, New York. At the time that the Robinhood restricted buying of the Stocks, Ms. Best was actively invested in AMC, holding 4 shares and GME, holding 2 shares. As a result of Robinhood's conduct in allowing only selling of her Stocks and not buying, Plaintiff Uniqueka Best suffered significant losses on her investments. Pursuant to 15 U.S.C.A. § 78u-4(a)(2)(A)(i)-(vi), Plaintiff Uniqueka Best incorporates by reference the attached certification regarding her purchases of the Stocks.

6.      Plaintiff Rasheed Best is a New York resident who lives in Queens, New York. At the time that the Robinhood restricted buying of the Stocks, Mr. Best was actively invested in

NAKD, holding 165 shares. As a result of Robinhood's conduct in allowing only selling of her Stocks and not buying, Plaintiff Rasheed Best suffered significant losses in his investments. Pursuant to 15 U.S.C.A. § 78u-4(a)(2)(A)(i)-(vi), Plaintiff Rasheed Best incorporates by reference the attached certification regarding his purchases of the Stocks.

7.      Plaintiff Jacob Rosmarin is a Florida resident who lives in Bal Harbour, Florida. At the time that the Robinhood restricted buying of the Stocks, Mr. Rosmarin was actively invested in AMC, holding 10 shares, NOK, holding 14 shares, GME, holding 1 share, and NAKD, holding 6 shares. As a result of Robinhood's conduct in allowing only selling of his Stocks and not buying, Plaintiff Rosmarin suffered significant losses on his investments. Pursuant to 15 U.S.C.A. § 78u-4(a)(2)(A)(i)-(vi), Plaintiff Rosmarin incorporates by reference the attached certification regarding his purchases of the Stocks.

8.      Plaintiff Ariel Rubenstein is a Florida resident who lives in Orlando, Florida. At the time that Robinhood restricted buying the Stocks, Mr. Rubenstein was actively invested in AMC, holding 1.5 shares, NOK, holding more than 8 shares, GME, holding 3 shares, and NAKD, holding 30 shares. As a result of Robinhood's conduct in allowing only selling of his Stocks and not buying, Plaintiff Rubenstein suffered significant losses on his investments. Pursuant to 15 U.S.C.A. § 78u-4(a)(2)(A)(i)-(vi), Plaintiff Rubenstein incorporates by reference the attached certification regarding his purchases of the Stocks.

9.      Defendant Robinhood Financial, LLC is a Delaware LLC with a principal place of business located at 85 Willow Road, City of Menlo Park, California. Defendant Robinhood Financial is a brokerage firm regulated by the Financial Industry Regulatory Authority, Inc. ("FINRA").

10.     Defendant Robinhood Securities, LLC is a Delaware LLC with a principal place of business located at 85 Willow Road, City of Menlo Park, California. Defendant Robinhood Securities is a brokerage firm regulated by FINRA.

11.     Defendant Robinhood Markets, Inc. is a Delaware Corporation with a principal place of business located at 85 Willow Road, City of Menlo Park, California.

12.     Because all of the above Defendants function as a single economic enterprise, they are jointly and severally liable under principles of direct, vicarious, and agency liability for each one of the violations laid out in this Complaint. As such, the below factual allegations refer to Defendants, collectively, as "Robinhood" in connection to the violations mentioned therein.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises out of a federal statute: Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78(j)(b), and Rule 10b-5 promulgated thereunder by the SEC. This court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class members is a citizen of a different state than Defendants; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

14.     This Court also has supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367, because these claims are so related to the SEC federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District. Venue is also proper in this Court pursuant to 15 U.S.C. § 78aa.

**FACTUAL ALLEGATIONS**

16.     Robinhood offers self-directed securities brokerage services to customers by means of its website and smartphone applications. Robinhood is a commission-registered broker-dealer and member of FINRA.

17.     Robinhood Financial acts as an introducing broker and has a clearing arrangement with Robinhood Securities. Beginning in November 2019, Robinhood began sending all customer orders for trade execution to Robinhood Securities. When customers open accounts with Robinhood, they enter into a customer agreement with Robinhood Financial and Robinhood Securities.

18.     On or about January 11, 2021, stocks of GME, AMC, and NOK, among other Stocks, began to rise, jeopardizing the trades of major institutional investors and hedge funds who had shorted those Stocks betting that their price would drop (the "Short Squeeze"). However, on or around January 28, 2021, the Stocks were no longer available for purchase from retail investors on Robinhood's platforms. For example, Robinhood's platform featured an icon that read "This stock is not supported on Robinhood":

**CLASS ACTION COMPLAINT**



19.     Robinhood prohibited the purchase of the Stocks by its retail investors purposefully, knowingly, and willingly.

20.     By prohibiting the purchase of the Stocks, Robinhood denied its consumers the ability to purchase shares of stocks rapidly rising in valuation.

21.     Robinhood's prohibition on purchasing the Stocks had a direct impact on lowering their valuation, resulting in losses for those consumers who already purchased the Stocks.

***Robinhood's Scienter***

22.     Robinhood derives its primary source of income through a practice known as "payment order flow." Specifically, "Robinhood makes money by passing its customer trades along to large market-making firms, like Citadel Securities, LLC, which pay Robinhood for the chance to fulfill its customer stock orders[.]"[1]  Robinhood reportedly receives 17 cents per

---

[1] See Kate Kelly, et al., Robinhood, in Need of Cash, Raises $1 Billion From Its Investors, N.Y. Times (Feb. 1, 2021),

**CLASS ACTION COMPLAINT**

hundred equity trades, and 58 cents per hundred options trades.[2] Robinhood made $180 million during the second quarter of 2020 alone, with over $110 million of that coming from options trades.[3]

23.     Robinhood's largest market-making firm is Citadel Securities, LLC; with whom it transacts the majority of its orders on the New York Stock Exchange.[4] The parent company of Citadel Securities, LLC is Citadel Enterprise Americas, LLC (collectively, "Citadel").

24.     As a result of the Short Squeeze, the trades being placed on Robinhood's platform created disastrous exposure to institutional investors who had shorted the Stocks. Amongst these investors was Melvin Capital, over whom Citadel holds a significant ownership stake. In order to compensate for Melvin Capital's losses from the Short Squeeze, Citadel was forced to bail out the company at the tune of $2 billion dollars.[5]

25.     As a result of the strong ties between Robinhood and Citadel, Citadel swayed Robinhood to stop trading the Stocks. Before doing so, however, Citadel reloaded its short positions in order to recoup some of its losses. Specifically, after the market closed on Wednesday, January 27, 2021, after-hours trades revealed suspicious coordinated trading activity.[6] Analytics showed that after-hour traders were taking more short positions in anticipation of a mass GME selloff. As demonstrated by the grey lines below, the volume of

https://www.nytimes.com/2021/01/29/technology/robinhood-fundraising.html; Kate Rooney &
Maggie Fitzgerald, Here's how Robinhood is raking in record cash on customer trades – despite
making it free, CNBC (Aug. 14, 2020, 10:17 AM),
https://www.cnbc.com/2020/08/13/howrobinhood-
makes-money-on-customer-trades-despite-making-it-free.html.
[2]Kelly. *Id.*
[3]Rooney. *Id.*
[4]https://cdn.robinhood.com/assets/robinhood/legal/RHS%20SEC%20Rule%20606a%20and%20
607%20Disclosure%20Report%20Q4%202020.pdf
[5]https://www.bloomberg.com/news/articles/2021-01-31/the-citadel-link-what-ken-griffin-has-to-
do-with-gamestop
[6] After-hours trading is not permitted for individual retail investors and is restricted to
institutional investors such as Citadel.

CLASS ACTION COMPLAINT

short positions was much higher before January 28, 2021 than on any of the prior days and had

steadily increased the week prior:



26.     The Stock prices, in turn, increased in price at approximately 11:00-11:30

a.m on January 28, 2021 before taking a deep dive when Robinhood's restrictions took

effect as the markets opened:



**CLASS ACTION COMPLAINT**

27.     The coordinated trading activity of the Stocks immediately prior to Robinhood's restrictions raises a strong inference that Robinhood acted with scienter by tipping off their principal market-makers, such as Citadel, in furtherance of their pecuniary interests.

28.     Robinhood's scienter is further demonstrated by the exposure that it faced as a result of the Short Squeeze from its clearinghouses.



29.     Because it takes two days to execute a trade, Robinhood is required to use clearinghouses to guard against the risks of defaults between buyers and sellers of securities. In so doing, clearinghouses "stand between two parties in a trade to guarantee payment if either side reneges."[7] To protect against default risks, "clearinghouses require their members—banks and brokers—to be well-capitalized, to deposit collateral and to pay into a default fund."[8] These deposits are determined, amongst other things, based on the volume of trades placed by a broker and the volatility of the stocks being traded. As a result of the Short Squeeze, the National Securities Clearing Corporation ("NSCC") requested that Robinhood post $3 billion dollars in

---

[7]https://www.marketwatch.com/discover?url=https%3A%2F%2Fwww.marketwatch.com%2Fam%20p%2Fstory%2Fpeterffy-calls-robinhood-decision-to-allow-limited-buys-of-gamestop-troubli ngim-%20not-comfortable-%2011611876619&link=sfmw_tw#https://www.marketwatch.com/a mp/story/peterffy-callsrobinhood-%20decision-to-allow-limited-buys-of-gamestop-troubling-im-not-comfortable-%2011611876619?mod=dist_amp_social%20 (last visited 01/31/21).
[8] *Id.*

cash as collateral for trades of the Stocks. The increased collateral demand by NSCC, according to Robinhood, was the motivating force behind their decision to restrict the Stocks:

> The amount required by clearinghouses to cover the settlement period of some securities rose tremendously this week. How much? To put it in perspective, this week alone, our clearinghouse-mandated deposit requirements related to equities increased ten-fold. And that's what led us to put temporary buying restrictions in place on a small number of securities that the clearinghouses had raised their deposit requirements on.[9]

30.      In discussing the decision to restrict the Stock, Mr. Tenev, Robinhood's CEO, said "we knew this was a bad outcome for customers."[10]

31.      Robinhood's statements, along with the circumstantial evidence surrounding the after-hour trades prior to their restrictions of the Stocks, would lead a reasonable person to deem Plaintiffs' allegations of scienter as cogent and at least as compelling as any opposing inferences.

32.      Plaintiffs specifically relied, to their detriment, on Robinhood's promise that by using their application he would be able to freely trade securities, including the Stocks.

33.      Plaintiffs and the proposed Class member are also entitled to a presumption of reliance based on the "fraud-on-the-market presumption." Plaintiffs and the proposed Class members justifiably relied on a free and open market for the Stocks. There was no reason to believe that Robinhood would interfere with that market.

34.      Plaintiffs and the proposed Class members directly suffered as a result of Robinhood's fraud. As a result of Robinhood's trading restrictions, the price of the Stocks immediately plummeted: proving loss causation.

---

[9] https://blog.robinhood.com/news/2021/1/29/what-happened-this-week (last visited 03/17/21).
[10] https://9to5mac.com/2021/02/01/robinhood-trading-restrictions/ (last visited 03/17/21).

**CLASS ACTION ALLEGATIONS**

35.     Plaintiffs bring this action on behalf of himself and all other similarly situated persons as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

36.     The class periods shall be defined from the date of the filing of this Complaint, back to any such time that the Court deems appropriate.

37.     Plaintiffs seek to represent the following Nationwide Class:

Nationwide Short Squeeze Class:

All persons within the United States who maintained a Robinhood account from January 1, 2021 through the present who were restricted from purchasing the Stocks.

38.     Plaintiffs also seeks to represent the following subclasses:

Florida Short Squeeze Class:

All persons within the state of Florida who maintained a Robinhood account from January 1, 2021 through present who were restricted from purchasing the Stocks.

New York Short Squeeze Class:

All persons within the state of New York who maintained a Robinhood account from January 1, 2021 through present who were restricted from purchasing the Stocks.

39.     Plaintiffs reserve the right to amend the above class definitions and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

40.     ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

41. *Numerosity*: While the exact number of members of the Classes is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Classes is ascertainable based upon the records maintained by Robinhood. At this time, Plaintiffs are informed and believe that the Classes include thousands of members. Therefore, the Classes are sufficiently numerous that joinder of all members of the Classes in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be to the benefit of the parties and the Court.

42. *Ascertainability*: Names and addresses of members of the Classes are available from Robinhood's records. Notice can be provided to the members of the Classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under state law and federal law.

43. *Typicality:* Plaintiffs' claims are typical of the claims of the other members of the Classes which they seek to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member of the Classes held an account with Robinhood and were prohibited from purchasing the Stocks on or around January 28, 2021 onward. There are no defenses that Robinhood may have that are unique to Plaintiffs.

44. *Adequacy*: Plaintiffs will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are adequate representatives of the Classes because they have no interests which are adverse to the interests of the members of the Classes. Plaintiffs are also committed to the vigorous prosecution of this action.

CLASS ACTION COMPLAINT

45.     *Superiority:* A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)     The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress for their claims other than through the procedure of a class action;

(b)     If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress for their claims other than through the procedure of a class action; and

(c)     Absent a class action, Robinhood likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

46.     Common questions of law and fact exist as to the members of the Classes, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Classes within the meaning of Federal Rule of Civil Procedure 23(b)(3). Such questions include, but are not limited to, the following:

(a)     Whether Robinhood violated federal and state securities laws by restricting trades of the Stocks on their platforms;

(b)     Whether Robinhood's conduct violated Florida's consumer protection laws;

(c)     Whether Robinhood's conduct violated New York's consumer protection laws;

(d)     Whether Robinhood's conduct constitutes a breach of contract;

(e)     Whether Robinhood's conduct constitutes a breach of its implied covenant of good faith and fair dealing;

CLASS ACTION COMPLAINT

(f)      Whether Plaintiffs and the Classes have suffered damages as a result of Robinhood's actions and the amount thereof;

(g)      Whether Plaintiffs and the Classes are entitled to statutory damages;

(h)      Whether Plaintiffs and the Classes are entitled to restitution;

(i)      Whether Plaintiffs and the Classes are entitled to injunctive relief to enjoin Robinhood from further engaging in these wrongful practices; and

(j)      Whether Plaintiffs and the Classes are entitled to attorney's fees and costs.

### CAUSES OF ACTION

<u>COUNT I</u>
**Breach of Contract**
**(On Behalf Of Plaintiffs And The Nationwide Short Squeeze Class)**

47.      Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

48.      To use the Robinhood trading platform, a potential user must enter the Customer Agreement with Robinhood "[i]n consideration of Robinhood . . . opening one or more accounts on [his or her] behalf . . . for the purchase, sale, or carrying of securities or contracts relating thereto."[11]

49.      Plaintiffs and the Nationwide Short Squeeze Class members all entered into the Customer Agreement with Robinhood and performed under its terms.

50.      Robinhood breached the Customer Agreements with Plaintiffs and the Nationwide Short Squeeze Class members on January 28, 2021, by preventing all of its users from buying, but not selling, the Stocks.

---

[11] Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement, Robinhood at 1,https://cdn.robinhood.com/assets/robinhood/legal/Robinhood%20Customer%20Agreement.pdf (last revised Dec. 30, 2020).

51.     Robinhood also breached its Customer Agreement in the following ways: (1) by not disclosing that it would arbitrarily restrict broadly traded securities from being purchased on its trading platform; (2) by failing to provide an adequate explanation to Plaintiffs and the Nationwide Short Squeeze Class members as to why the restricted Stocks could be sold but not bought; (3) by knowingly putting Plaintiffs and the Nationwide Short Squeeze Class members at a disadvantage to other investors who were still able to buy the Stocks; (4) by preventing Plaintiffs and the Nationwide Short Squeeze Class members from performing trades in a timely manner or at all; and (5) by failing to comply with applicable legal, regulatory, or licensing requirements for a stock broker.

52.     Robinhood's breach damaged Plaintiffs and the Nationwide Short Squeeze Class members by causing the value of the Stocks to go down on January 28, 2021, and/or by preventing Plaintiffs and the Nationwide Short Squeeze Class members from buying shares of the Stocks that decreased on January 28, 2021.

### COUNT II
**Breach of Implied Covenant of Good Faith & Fair Dealing**
**(On Behalf Of Plaintiffs And The Nationwide Short Squeeze Class)**

53.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

54.     To use the Robinhood trading platform, a potential user must enter the Customer Agreement with Robinhood.

55.     Plaintiffs and the Nationwide Short Squeeze Class members all entered the Customer Agreement with Robinhood and performed under its terms.

CLASS ACTION COMPLAINT

56.     Robinhood had an implied duty of good faith and fair dealing to refrain from interfering with Plaintiffs and the Nationwide Short Squeeze Class members' ability to purchase securities.

57.     Robinhood breached its implied duty on January 28, 2021, when it prevented all its users from buying the Stocks, thereby interfering with Plaintiffs and the Nationwide Short Squeeze Class members' ability to purchase securities and frustrating Plaintiff' and the Nationwide Short Squeeze Class members' rights to the benefits of their Customer Agreements, specifically by: (1) failing to provide services necessary to timely execute a trade on the stock market; (2) failing to allow Plaintiffs and the Nationwide Short Squeeze Class members to trade certain securities at all; (3) failing to inform Plaintiffs and the Nationwide Short Squeeze Class members in a timely and effective manner about the dramatic changes to users abilities to purchase the Stocks; and (4) by prohibiting Plaintiff and the Nationwide Short Squeeze Class members from buying the Stocks due to Robinhood's own pecuniary interests and not disclosing that interest to Plaintiffs or the Nationwide Short Squeeze Class members.

58.     Robinhood acted in bad faith by placing its own pecuniary interests, and/or the interests of others—including, potentially, various Citadel entities—above the interests of Plaintiffs and the Nationwide Short Squeeze Class members.

59.     Robinhood acted in bad faith when it claimed that "market volatility" justified its restrictions.

60.     Robinhood's breach damaged Plaintiffs and the Nationwide Short Squeeze Class members by causing the value of the Stocks to go down on January 28, 2021, and/or by preventing Plaintiffs and the Nationwide Short Squeeze Class members from buying shares of the Stocks that decreased on January 28, 2021.

## COUNT III
### Breach of Fiduciary Duty
**(On Behalf Of Plaintiffs And The Nationwide Short Squeeze Class)**

61.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

62.     As a broker dealer and provider of financial services, Robinhood was a fiduciary to Plaintiffs and the Nationwide Short Squeeze Class members. As such, Robinhood owed them the highest duty of good faith and integrity in performing financial services and acting as securities brokers on their behalf.

63.     As described herein, Robinhood breached its fiduciary duties to Plaintiffs and the Nationwide Short Squeeze Class members when it prevented all its users from buying the Stocks, thereby interfering with Plaintiffs and the Nationwide Short Squeeze Class members' ability to purchase securities and frustrating Plaintiffs and the Nationwide Short Squeeze Class members' rights to the benefits of their Customer Agreements, specifically by: (1) failing to provide services necessary to timely execute a trade on the stock market; (2) failing to allow Plaintiffs and the Nationwide Short Squeeze Class members to trade certain securities at all; (3) failing to inform Plaintiffs and the Nationwide Short Squeeze Class members in a timely and effective manner about the dramatic changes to users abilities to purchase the Stocks; and (4) by prohibiting Plaintiffs and the Nationwide Short Squeeze Class members from buying the Stocks due to Robinhood's own pecuniary interests and not disclosing that interest to Plaintiffs and the Nationwide Short Squeeze Class members.

64.     Robinhood acted in bad faith by placing its own pecuniary interests, and/or the interests of others—including, potentially, various Citadel entities—above the interests of Plaintiffs and the Nationwide Short Squeeze Class members.

65.     Robinhood acted in bad faith when it claimed that "market volatility" justified its restrictions.

66.     Robinhood's breach damaged Plaintiffs and the Nationwide Short Squeeze Class members by causing the value of the Stocks to go down on January 28, 2021, and/or by preventing Plaintiffs and the Nationwide Short Squeeze Class members from buying shares of the Stocks that decreased on January 28, 2021.

<u>COUNT IV</u>
**Common Law Negligence**
**(On Behalf Of Plaintiffs And The Nationwide Short Squeeze Class)**

67.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

68.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its users.

69.     Robinhood breached its duty to exercise reasonable care when, on January 28, 2021, Robinhood restricted Plaintiffs and the Nationwide Short Squeeze Class members from purchasing the Stocks, without warning, even though the value of the Stocks was increasing during the dates leading up to January 28, 2021.

70.     Robinhood's breach foreseeably damaged Plaintiffs and the Nationwide Short Squeeze Class members by causing the value of the Stocks to go down on January 28, 2021, and/or by preventing Plaintiffs and the Nationwide Short Squeeze Class members from buying shares of the Stocks that decreased on January 28, 2021

<u>**COUNT V**</u>
**Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5**
**(On Behalf Of Plaintiffs And The Nationwide Short Squeeze Class)**

71.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

72.     This Count is brought under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78(j)(b), and Rule 10b-5 promulgated thereunder by the SEC.

73.     Robinhood committed a manipulative act by restricting trading of the Stocks on their platforms, as described above. Robinhood permitted only selling of the Stocks followed by limited buying, and, by doing so, manipulated the market and impacted the value of the Stocks.

74.     Further, Robinhood made material misrepresentations and/or omissions regarding its users ability to execute orders on its platform, including the Stocks, without any restrictions.

75.     Robinhood acted with scienter because they knew that their conduct would cause harm to Plaintiffs and the Nationwide Short Squeeze Class members, and proceeded to manipulate the market and make material misrepresentations and/or omissions regardless.

76.     Perhaps the clearest evidence of Robinhood's scienter is that its CEO publicly admitted that he and Robinhood knew that its actions would be harmful to its customers, and restricted selling of the Stocks fully aware of this fact.

77.     Further, given the increase in shorts and coordinated trading activity prior to Robinhood's restrictions on the Stocks, it is clear that Robinhood leaked information to some of its business partners, such as Citadel, thus intentionally manipulating and interfering with the market in violation of the law.

78.     Plaintiffs and the Nationwide Short Squeeze Class members relied on Robinhood's representations and/or omissions to their detriment. Specifically, Plaintiffs and the

Nationwide Short Squeeze Class members relied on Robinhood's representations and promises that they would have free and open access to the markets, including the Stocks. Further, Plaintiffs and the Nationwide Short Squeeze Class members are entitled to a presumption of reliance based on the fraud- on-the-market presumption. Specifically, Plaintiffs and the Nationwide Short Squeeze Class members had the right to rely on a free and open market for the Stocks at issue (i.e. a market free of manipulation).

79.     Plaintiffs and the Nationwide Short Squeeze Class members suffered damages as a direct and proximate result of Robinhood's conduct, to wit a rapid and precipitous decline in the value of the Stocks directly caused by Robinhood's conduct.

80.     As a result of Robinhood's securities violations, Plaintiffs and the Nationwide Short Squeeze Class members are entitled to damages, statutory damages, and attorney's fees and costs.

### COUNT VI
**Violations of The Florida Securities And Investor Protection Act ("FSIPA")**
**(On Behalf Of Plaintiffs Jacob Rosmarin, Ariel Rubenstein, And The Florida Short Squeeze Class)**

81.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein

82.     Fla. Stat. Ann. § 517.301 makes it unlawful for a person "[i]n connection with the offer, sale, or purchase of any investment or security…directly or indirectly":

> 1.  To employ any device, scheme, or artifice to defraud;
>
> 2.  To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

**20**

CLASS ACTION COMPLAINT

3.   To engage in any transaction, practice, or course of business which operates as a fraud or deceit upon a person.

83.   "The elements of a cause of action under Section 301 are identical to those under Rule 10b–5 of the Exchange Act, 'except that the scienter requirement under Florida law is satisfied by [a] showing of mere negligence,' *Grippo v. Perazzo,* 357 F.3d 1218, 1223 (11th Cir .2004) (citing *Gochnauer v. A.G. Edwards & Sons, Inc.,* 810 F.2d 1042, 1046 (11th Cir. 1987)), and a plaintiff does not need to prove loss causation under Florida law." *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011).

84.   For the reasons stated above, Plaintiffs satisfy each element of their claims under the FSIPA because the elements of FSIPA are similar to a 10b-5 claim but even less stringent, lowering the scienter requirement to mere negligence and not requiring proof of loss causation.

85.   As a result of Robinhood's securities violations, Plaintiffs and the Florida Short Squeeze Class members are entitled to damages, statutory damages, and attorney's fees and costs.

## COUNT VII
### Violations of  Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")
### (On Behalf Of Plaintiffs Jacob Rosmarin, Ariel Rubenstein, And The Florida Short Squeeze Class)

86.   Plaintiffs repeat the allegation contained in the foregoing paragraphs as if fully set forth herein.

87.   The FDUTPA protects "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.212(2).

88.   Plaintiffs and the Florida Subclass members are "consumers" within the meaning of FDUTPA. Fla. Stat. Ann. § 501.203(7) ("Consumer" means an individual; child, by and

through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination.").

89.     By soliciting investor funds as described in detail above, Robinhood engaged in "trade and commerce" within the meaning of Fla. Stat. Ann. § 501.203(8).

90.     Robinhood has committed a *per se* violation of FDUTPA by virtue of their violation of the Florida Securities And Investor Protection Act, which is a statute designed for consumer protection and proscribes unfair methods of competition and deceptive acts and practices.

91.      Robinhood caused injury to Plaintiffs and the Florida Short Squeeze Class members because Robinhood's actions, as described above, caused the value of the Stocks to precipitously decline, thereby harming the value of Plaintiffs and the Florida Short Squeeze Class members' investments. Plaintiffs and the Florida Short Squeeze Class members suffered a substantial loss proximately caused by Robinhood's conduct.

92.     As a result of Robinhood's violations of the FDUTPA, Plaintiffs and the Florida Short Squeeze Class members are entitled to damages, statutory damages, and attorney's fees and costs.

## COUNT VIII
**Violation Of The New York General Business Law § 349**
**(On Behalf Of Plaintiffs Uniqueka Best, Rasheed Best, And The New York Short Squeeze Class)**

93.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

94.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

95.     In its sale of goods throughout the State of New York, Robinhood conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

96.     Plaintiff and the New York Short Squeeze Class members are consumers who purchased products from Robinhood for their personal use.

97.     By the acts and conduct alleged herein, Robinhood has engaged in deceptive, unfair, and misleading acts and practices, directed at consumers, which include, without limitation, misleading consumers into believing that they would be able to freely trade on Robinhood's application without any restrictions.

98.     The foregoing deceptive acts and practices were misleading in a material way because they constituted material misrepresentations and/or omissions regarding the characteristics and quality of Robinhood's trading platform to induce consumers to use the same.

99.     Robinhood caused injury to Plaintiff and the New York Short Squeeze Class members because Robinhood's actions, described above, mislead consumers into using Robinhood's platform and caused them to lose value of the Stocks due to their precipitously decline, thereby harming the value of Plaintiff and the New York Short Squeeze Class members investments. Plaintiff and the New York Short Squeeze Class members suffered a substantial loss proximately caused by Robinhood's conduct.

100.    As a result of Robinhood's violations of the New York General Business Law § 349, Plaintiff and the New York Short Squeeze Class members are entitled to damages, statutory damages, and attorney's fees and costs.

## COUNT IX
### Violation Of The New York General Business Law § 350
### (On Behalf Of Plaintiff Uniqueka Best, Rasheed Best, And The New York Short Squeeze Class)

101.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

102.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

103.    Robinhood violated New York General Business Law § 350 by falsely advertising to Plaintiff and the New York Short Squeeze Class members that they would be able to freely purchase the Stocks without any restrictions.

104.    As a result of Robinhood's material misrepresentations and omissions, Plaintiff and the New York Short Squeeze Class members have suffered damages because they would not have used Robinhood's platform and/or purchased the Stocks had they known that Robinhood would interfere with their investments.

105.    As a result of Robinhood's violations of the New York General Business Law § 350, Plaintiff and the New York Short Squeeze Class members are entitled to damages, statutory damages, and attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Classes; and naming Plaintiffs' attorney as Class Counsel to represent the Classes;

(b)     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiffs and the Classes their reasonable attorney's fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.


Dated: April 21, 2021                    Respectfully submitted,

                                         **GUCOVSCHI LAW, PLLC.**

                                         By:     _/s/ Adrian Gucovschi_____
                                                 Adrian Gucovschi, Esq.

                                         Adrian Gucovschi, Esq.
                                         630 Fifth Avenue, Suite 2000
                                         New York, NY 10111
                                         Telephone: (212) 884-4230
                                         Facsimile: (212) 884-4230
                                         E-Mail: adrian@gucovschi-law.com

                                         *Attorney for Plaintiffs*

                                         *Pro Hac Vice Filed In Compliance*
                                         *with Certificate of Understanding ECF No. 221*